IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

NANCY CHAPMAN, )
*individually and on behalf of a class* )
*of those similarly situated*, )
　　　　　　　　　　　　　　　　　　 )
　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　　 )
v. ) Case No. 12-CV-613-GKF-PJC
　　　　　　　　　　　　　　　　　　 )
BOK FINANCIAL CORPORATION, )
and BOKF, NA, )
　　　　　　　　　　　　　　　　　　 )
　　　　　Defendants. )

**OPINION AND ORDER**

Before the court is the Motion for Spoliation Sanctions [Dkt. # 67] of BOK Financial Corp. and BOKF, NA (collectively, "BOK"). BOK moves to sanction plaintiff Nancy Chapman ("Chapman") for discarding her Franklin Planners for the years 2010, 2011, and 2012. BOK requests the court instruct the jury that the discarded planners contained information adverse to Chapman's claims. Alternatively, BOK requests (i) preclusion of Chapman's testimony on the issue of overtime hours and (ii) an instruction that the jury *may* infer the discarded planners contained information adverse to Chapman's claims.

**I.　　Material Facts**

In 2010 Chapman joined a FLSA collective action suit against Bank of America ("BOA") to obtain unpaid overtime. [Dkt. # 67-1, pp. 83:25-84:10; 150:10-12]. In approximately August or September 2012, Chapman decided to initiate suit against BOK. [Dkt. # 67-1, pp. 122:7-123:25]. Her decision to initiate suit against BOK was based on the settlement of her prior suit against BOA, as both employers did not pay overtime. [Dkt. # 67-1, pp. 122:13-123:25, 135:12-136:11, 149:7-12]. Chapman was represented by the same counsel in her suit against BOA.

1

[Dkt. # 67-1, p. 136:14-19]. Chapman alleges BOK failed to keep accurate records of the time its loan officers worked. [Dkt. # 9, ¶ 40; Dkt. # 67-1, p. 296:3-7]. Chapman testified that about two months after she was told to log her hours in January of 2012, her manager told her she had too many overtime hours and she needed to watch it. She then began to underreport her hours. [Dkt. # 67-1, pp. 37:1-38:19, pp. 51: 1-52:5, 228:1-229:24, 235:1-23]. Later, Chapman told her supervisor she was adjusting her time records to just 40 hours a week, to which the supervisor responded, "Good." [Dkt. # 70-1, 246:12-20].

Chapman provided the following testimony about discarding her Franklin Planners:

> Q: No? Do you have any calendars? Did you keep a calendar in 2010?
> A: I did.
> Q: Okay. In what form did you keep a calendar in 2010?
> A: Franklin Planner.
> Q: And do you still have that Franklin Planner?
> A: No.
> Q: What happened to it?
> A: I threw it away.
> Q: When?
> A: A couple years ago. [1]
> Q: 2012?
> A: Probably. Maybe 2013.
> Q: Did you have a Franklin Planner in 2011?
> A: Yes.
> Q: Did you have a Franklin Planner in 2012?
> A: Yes.
> Q: And did your 2011 Franklin Planner get thrown away as well?
> A: Yes.
> Q: And did your 2012 Franklin Planner get thrown away as well?
> A: Yes.
> Q: And your best memory is that those were thrown away in 2012 or 2013.
> A: Yes.

[Dkt. # 67-1, pp. 82:18-83:19].

---

[1] Chapman was deposed on February 24, 2014.

> Q: So you had them at your house and then you threw them out?
> A: Yes.
> Q: So it was after you left the Bank of Texas?
> A: Yes.
> Q: So you didn't throw them out at Bank of Texas as part of your departure?
> A: No.
> Q: You took them home with you after you worked at Bank of Texas?
> A: Mm-hmm, yes.
> Q: With all that contact information on there?
> A: Exactly.
> Q: And why did you throw them out?
> A: Because I went electronic.
> Q: And when did you go electronic?
> A: Probably a year ago.
> Q: So roughly the beginning of 2013?
> A: Mm-hmm, yeah.
> Q: So it was about the beginning of 2013 that you threw away your plan – Franklin Planners for the years 2010 to 2012?
> A: As best I can recall.
> Q: Did you ever take any efforts after filing the lawsuit that you filed that we're here to take your deposition today to preserve any of your materials from Bank of Texas?
> A: No.

[Dkt. # 67-1, pp. 86:15-87:17].

> Q: That's the Franklin Planners that you threw away in February or so of 2013?
> A: Correct.

[Dkt. # 67-1, p. 231:20-22].

Chapman testified that for the years 2010 to 2012, the planners would be the best evidence of how she used her time. [Dkt. # 67-1, p. 86:4-7]. Chapman's planners included the open houses she attended as a loan officer for BOK, task lists, her personal trips to Tyler, Texas, appointment schedules (such as doctor's appointments, dinners, and church rehearsals), and generally what she "did throughout the day." [Dkt. # 67-1, pp. 84:16-85:25, 172:14-16]. Chapman admits that, absent her planners, there are no records regarding what open houses she

3

attended. [Dkt. # 67-1, p. 173:1-4]. The planners did not include the hours she worked on a daily basis, or the hours she worked on Sundays. [Dkt. # 67-1, pp. 84:21-85:6, 172:9-13]. Chapman claims to have regularly worked on Saturdays, Sundays, and late on weekdays. [Dkt. # 67-1, pp. 171:3-172:5].

After BOK moved for spoliation sanctions, Chapman submitted a declaration in which she states as follows: [2] The first time she met with her attorneys to discuss initiating litigation against BOK was in October 2012. After meeting with her attorneys, she understood her obligation to maintain relevant documents and did so.[3] She promptly produced to her attorneys all relevant documents in her possession. Before the end of 2012, she kept a calendar in a Franklin Planner system. She discarded her Franklin Planners for previous years at the start of the next year, and discarded her planners for 2010 and 2011 at the start of 2011 and 2012,

---

[2] BOK requests the court disregard Chapman's declaration because it is a "sham." The doctrine of sham affidavits generally pertains to affidavits that contradict prior testimony and are designed to create a sham fact issue on summary judgment. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001). In the Tenth Circuit, the doctrine has also been applied outside the summary judgment context. *See U.S. ex rel. Precision Co. v. Koch Indus., Inc.*, 1990 WL 422422, at *4 (N.D. Okla. Nov. 27, 1990) aff'd, 971 F.2d 548 (10th Cir. 1992) (disregarding sham affidavit in context of 12(b)(1) motion to dismiss).

    A declaration may not be disregarded merely because it conflicts with the affiant's prior sworn statements. *Ralston*, 275 F.3d at 973 (citing *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)). However, a district court may disregard a contrary affidavit when it concludes the affidavit constitutes an attempt to create a sham fact issue. *Id.* Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain. *Id.*

    Here, Chapman's attorney had the opportunity to examine Chapman at the deposition but did not seek to clarify the testimony until the declaration. And Chapman's declaration is not based on newly discovered evidence. However, Chapman's deposition testimony reflects confusion, imprecision, and vagueness, which the declaration attempts to explain. Upon review, the court cannot conclude the declaration was designed to create a sham fact issue with respect to Chapman's discarding of her Franklin Planners. Though the declaration is not a sham, the court has not relied on the declaration in the following analysis.

[3] In her deposition, Chapman testified she had not taken efforts to preserve any of her materials from Bank of Texas. [Dkt. # 67-1, pp. 87:13-17].

respectively. [Dkt. # 76-1, ¶ 3].[4] Chapman does not recall exactly when she threw out her 2012 planner. She was in the process of transitioning to an electronic system towards the end of 2012, and discarded that year's planner as part of the process. While she cannot recall the exact date, she recalls the 2012 planner was discarded "before the litigation was initiated." [*Id.*].

Chapman filed her Complaint on November 2, 2012.

## II. Discussion

### A. Whether the Court Should Instruct the Jury that the Planners Contained Information Adverse to Chapman's Claims

"Spoliation" is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in a pending or reasonably foreseeable litigation." *Oldenkamp v. United Am. Ins. Co.*, 2008 WL 4682226, at *2 (N.D. Okla. Oct. 21, 2008), aff'd 619 F.3d 1243, 1250-51 (10th Cir. 2010) (citing *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). A party seeking an adverse inference instruction based on spoliation of evidence must establish three things: (1) that the party having control over the evidence had an obligation to preserve it; (2) that the records were destroyed with a "culpable" state of mind; and (3) that the destroyed evidence was relevant to the movant's claims or defenses. *Id*.

An adverse inference instruction is a powerful sanction. It "brands" a party as a "bad actor" and opens the door to speculation by the jurors who are instructed they may infer the presence of harmful information in the unknown contents of the destroyed evidence. *Id.* In order to obtain an adverse inference instruction the movant must show the adverse party "acted

---

[4] Although Chapman declares she testified in her deposition that she discarded her 2010 and 2011 planners at the beginning of the following calendar year, she provides no citation to the deposition, and the court does not appear to have been provided any such testimony in the attached deposition excerpts. Moreover, her declaration as to when she discarded the 2010 planner is contrary to her sworn confirmation that the planners were thrown away "in 2012 or 2013." [Dkt. # 67-1, pp. 82:18-83:19].

5

in bad faith in destroying evidence." *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1250-51 (10th Cir. 2010) (citing *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997); *EEOC v. Dillon Companies, Inc.*, 839 F. Supp. 2d 1141, 1145 (D. Colo. 2011)). In the Tenth Circuit, mere negligence is not sufficient for a spoliation instruction. *Oldenkamp*, 2008 WL 4682226, at *2; *see also Aircraft Fueling Sys., Inc. v. Southwest Airlines Co.*, 2011 WL 4954250, at *2 (N.D. Okla. Oct. 18, 2011).[5]

It is movant's burden to show Chapman had a duty to preserve the evidence because she knew, or should have known, that litigation was imminent. *Doe v. Okla. City Univ.*, 2010 WL 5395011, at *5 (10th Cir. Nov. 10, 2010) (citing *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006)). Chapman decided to initiate litigation against BOK in August to September of 2012. [Dkt. # 67-1, pp. 122:7-123:25, 149:7-12]. Thus, her duty to preserve evidence relevant to her claims arose in August or September of 2012.

BOK contends Chapman acted in bad faith when she discarded the planners because: (1) she was previously involved in overtime litigation and thus knew the relevance of the planners; (2) "she knew that BOK's time records were inaccurate since she intentionally submitted erroneous time information"; (3) she knew the planners "were the only evidence of her actual work hours"; (4) she knew BOK was unaware, until three weeks before her termination, that she was working unrecorded overtime hours; and (5) "she discarded the planners in February 2013, after she filed her consent to join this suit." [Dkt. # 67, p. 7].

The court has reviewed the arguments and evidentiary materials, and concludes BOK has not met its burden of showing Chapman acted in bad faith in discarding the planners. First, Ms. Chapman was previously involved in overtime litigation as one of 6,000 opt-in plaintiffs in an

---

[5] *But see Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) (expressing Second Circuit rule that the sanction of an adverse inference should be available even for the negligent destruction of documents if necessary to further the remedial purpose of the inference).

6

action that settled without discovery immediately after the close of the opt-in period. BOK has not shown she knew the relevance of the planners to this litigation.

Second, Chapman has testified her manager called her into his office to talk to her about not reporting her overtime; BOK's claim that Chapman acted in bad faith by submitting erroneous time information is a misguided attempt to turn Chapman's claim on its head.

Third, BOK has failed to show Chapman "knew that the planners were the only evidence of her actual work hours." Rather, the evidence before the court at this juncture indicates Chapman did not record her stop and start times or hours worked in her planners. [Dkt. # 67-1, pp. 84:21-85:6, 172:9-13]. BOK points to the following exchanges:

> Q: But there are no records *that would show what you were actually doing in 2010 and 2011 and 2012* because you threw away your Franklin Planners?
> A: To my knowledge, correct.
>
> [Dkt. # 67-1, p. 198:2-5] (emphasis added).
>
> Q: So for the years 2010 to 2012, the best record of how you were using your time would have been on a Franklin Planner, not on your --?
> A: Yes. Yes.

[Dkt. # 67-1, p. 86:4-7]. Neither exchange establishes Chapman's planners contained specific evidence of hours worked, particularly in light of Chapman's more specific testimony to the contrary.

Fourth, BOK's assertion that Chapman knew BOK was unaware she was working unrecorded overtime is a disputed issue of material fact that must be resolved at trial.

Fifth, BOK, in representing that Chapman discarded the planners in February 2013, glosses over the ambiguities in Chapman's deposition testimony. That testimony variously suggests she threw away her planners either "in 2012 or 2013" [Dkt. # 67-1, p. 82:21-83:19] or in "February or so of 2013." [Dkt. # 67-1, p. 231:20-22]. Moreover, the testimony regarding

7

when she threw away her planners is riddled with qualifiers, such as "probably," "your best memory," "2012 or 2013," "roughly," and "as best I can recall." The evidence is therefore unclear as to whether Chapman discarded her planners before or after she decided to pursue litigation against BOK. None of BOK's contentions singly or in combination are capable of carrying their burden to show Chapman destroyed her planners in bad faith.

Finally, Chapman's discarding of the planners, if it occurred after she knew litigation was imminent, may have been negligent or grossly negligent, but BOK has not shown it was in bad faith.

It is also BOK's burden to establish the planners were relevant to BOK's defenses and that BOK was prejudiced by their destruction. BOK has shown the planners could have been relevant to the issue of Chapman's damages. Although BOK has not shown that Chapman recorded the hours she actually worked in her planners, BOK might have been able to use entries in the planners to reconstruct some of the time Chapman actually worked. Insofar as BOK has other sources of evidence to help it reconstruct Chapman's actual work hours, including the testimony of other BOK employees, computer log-in and log-off records, badge swipe records, and email traffic, BOK has not established that its prejudice in the loss of the planners was substantial.

### B. Whether BOK is Entitled to Lesser Sanctions

In the alternative, BOK requests two lesser sanctions, which it claims do not require a showing of bad faith: (1) an instruction that the jury *may* infer the discarded planners contained information adverse to Chapman's claims and (2) preclusion of Chapman's testimony on the issue of overtime hours.

8

Although federal courts in some other circuits allow "permissive inference instructions,"[6] the Tenth Circuit has held that a jury instruction "that adverse inferences *may* be drawn from a party's destruction of evidence" requires a showing of bad faith. *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1250-51 (10th Cir. 2010) (emphasis added) (citing *Aramburu*, 112 F.3d at 1407).[7] As BOK has not met its burden of showing Chapman's bad faith, this court may not give a "permissive inference" jury instruction.

A court in this circuit may impose other lesser sanctions absent a finding of bad faith. *Henning v. Union Pacific R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008). A lesser spoliation sanction is proper where: (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence. *Id.* The severity of the sanction should be a function of and correspond to the willfulness of the spoliator's destructive act and the prejudice suffered by the non-spoliating party. *United States v. Koch Indus., Inc.*, 197 F.R.D. 463, 483 (N.D. Okla. 1998). In determining an appropriate sanction, courts consider a variety of factors, though the following two carry the most weight: the degree of culpability of the party who lost or destroyed the evidence, and the degree of actual prejudice to the other party. *Id.*

---

[6] *See Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 267-68 (2d Cir. 1999) (affirming the grant of a "permissive inference" instruction where district court found party had acted with gross negligence) ("As other Circuits have recognized, it makes little sense to confine promotion of that remedial purpose [of an adverse inference] to cases involving only outrageous culpability, where the party victimized by the spoliation is prejudiced irrespective of whether the spoliator acted with intent or gross negligence."); 7 Moore's Fed. Prac. § 37.121, n.18.

[7] In support of its request for a permissive inference instruction, BOK cites *Swanda Bros., Inc. v. Chasco Constructors*, Ltd., L.L.P., 2012 WL 4382612, at *5-6 (W.D. Okla. Sept. 25, 2012). In *Swanda*, the district court found the record sufficient to support a "permissive inference" that missing documents would be harmful to a third-party defendant that moved to dismiss on grounds of tribal sovereign immunity, though the record did not support a finding of bad faith. Insofar as *Oldenkamp* is controlling precedent, *Swanda* does not provide authority for a district court in this circuit to give a permissive inference instruction absent a showing of bad faith.

The court is unpersuaded that preclusion of Chapman's testimony on the issue of overtime hours would be a "lesser" sanction than an adverse inference instruction. Preclusion of testimony on overtime hours would prohibit Chapman from testifying about her claim, and would effectively deny Chapman a trial, an overly severe sanction.

The planners' relevance goes to Chapman's alleged damages, not to liability. Preclusion of Chapman's testimony on the issue of overtime hours would preclude testimony concerning liability, and would therefore be overly severe. Moreover, to the extent BOK has other available sources of evidence to recreate, and possibly limit, Chapman's claimed overtime hours (through computer log-in and log-off records, badge swipe records, etc.), the prejudice BOK allegedly suffered is not great.

Chapman repeatedly stated in her deposition she was not sure on the timing of the discard, "probably" 2012. Throughout the deposition, her recollection is vague at best as to when she discarded the planners. Such testimony does not show willfulness or any other degree of culpability necessary to preclude Chapman's testimony.

In support of its request to exclude Chapman's testimony on the issue of overtime hours, BOK cites *Tracy v. NVR, Inc.*, 2012 WL 1067889 (W.D.N.Y. Mar. 26, 2012). In *Tracy* the evidence had been copied, then altered to create a second version, after which the originals were destroyed. No similar evidence of deliberate alteration is present in this case.

In short, BOK has not sufficiently shown Chapman discarded the planners after she knew or should have known litigation was imminent. In addition, the requested sanction is overly harsh given the considerations set forth above. BOK may cross-examine Chapman at trial regarding the destruction of the planners, and may impeach her with her own deposition

testimony. For these reasons, the court declines to preclude Chapman's trial testimony on the issue of overtime hours.

### III. Conclusion

For the reasons stated above, the Motion for Spoliation Sanctions [Dkt. # 67] is denied with respect to BOK's requests for an adverse inference instruction, preclusion of Chapman's testimony on the issue of overtime hours, and a "permissive inference" jury instruction.

DATED this 17th day of July, 2014.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT