UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Nancy Chapman, individually and on behalf of a class of those similarly situated,<br><br>              Plaintiff,<br><br>   v.<br><br>BOK Financial Corporation, and BOKF, NA,<br><br>             Defendants. | Case No. 12-CV-613-GKF-PJC |

**SETTLING PLAINTIFFS' MOTION FOR APPROVAL OF REASONABLE
ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM IN SUPPORT**

Settling Plaintiffs hereby move for an order awarding their attorneys' reasonable fees and expenses as provided by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and in accordance with the Parties' settlement agreements.

1.    Plaintiffs Nancy Chapman, Richard Allen, Yancey Langley, Anthony Cordova, and Beverly Holland (hereafter, "Plaintiffs") have each entered into individual settlements with Defendants BOK Financial Corporation and BOKF, NA (hereafter, "BOK") that resolve this litigation with respect to these Plaintiffs.

2.    As more fully described in Plaintiffs' Unopposed Motion for Approval of Settlement and Release of Claims under the Fair Labor Standards Act (Doc. 121), these settlements meet the applicable judicial standard for the fair and reasonable settlement of bona fide disputes under the FLSA.

3.    BOK agreed as a part of the settlements that for each settling Plaintiff, "the Company will pay reasonable attorneys' fees and costs attributable to Plaintiff to be

1

determined by the Court," and that "No party shall have any right to appeal the Court's final determination of fees and costs." Settlement Agreements, ¶ 5.

4. Plaintiffs respectfully request that this Court approve $283,495 in attorneys' fees and $12,394.21 in costs of litigation for the settling Plaintiffs. In support of this Motion, Plaintiffs state as follows:

**I.   Procedural History.**

On November 2, 2012, Plaintiff Nancy Chapman filed this collective action claiming BOK Financial Corporation failed to pay her for all wages and overtime worked under the FLSA. (Doc. 1). On November 28, 2012, Chapman filed an amended complaint joining BOKF, NA as a defendant. (Doc. 2).

On April 30, 2013, after full briefing, the Court granted Plaintiffs' motion for conditional certification of an FLSA collective action and directed notice to loan originators who worked for BOK from April 30, 2010 to January 1, 2011 (the misclassification claims) as well as notice to loan originators who worked for BOK in the Dallas/Ft. Worth area branches after April 30, 2010 (the misclassification and "off the clock" claims). (Doc. 28). Seventeen employees joined the case by returning a "Consent to Join" form pursuant to 29 U.S.C. § 216(b). As the litigation progressed, three individuals withdrew their consents to join, leaving fourteen plaintiffs in the case.

Following the close of the notice period, the parties engaged in extensive merits-based discovery. Plaintiffs served document requests and a 30(b)(6) notice to BOK on October 11, 2013. (*See* Ex. 1, Declaration of George Hanson, ¶ 8). Although the parties attempted to resolve discovery disputes without assistance from the Court, Plaintiffs ultimately were required to fila a motion to compel in order to obtain relevant documents

(Docs. 49, 50, 55, 63). Additionally, Plaintiffs conducted three depositions of BOK corporate designees in Tulsa on March 13 and 26, 2014. (Ex. 1, ¶ 8).

BOK served interrogatories and document requests on Plaintiffs on October 9, 2013. (*Id.*). Additionally, BOK conducted full-day depositions of six opt-in plaintiffs (four of whom resolved their claims via the current settlement agreements). The depositions took place in Colorado and Texas, necessitating travel of multiple attorneys to sufficiently staff the depositions. (*Id.*).

On March 31, 2014, both parties filed opposing motions for partial summary adjudication (Docs. 66, 68), and the parties engaged in substantial briefing related to the opposing motions (Docs. 69, 71, 73, 75). The Court granted BOK's motion on July 25, 2014, effectively dismissing the claims of the nine individuals who only had misclassification claims, consisting of all eight nationwide Plaintiffs and one Dallas/Ft. Worth Plaintiff who did not have any eligible time during the "off the clock" period. (Doc. 95). Plaintiffs' counsel continued to prepare for trial with the five remaining Dallas/Ft. Worth Plaintiffs with "off the clock" claims. (Ex. 1, ¶ 8).

On July 30, 2014, the Court entered an Order setting the case for a September 22, 2014 trial. (Doc. 97). Subsequent settlement negotiations between the parties ultimately led to execution of five individual settlement agreements on October 1, 2014 that resolved all pending claims for the five Plaintiffs. BOK agreed to pay $92,102 to resolve the individual unpaid wage claims of these Plaintiffs. This amount is equal to the alleged actual damages disclosed in the proposed pretrial order, and equal to the actual damages these Plaintiffs would have sought at trial, exclusive of any liquidated damages, attorneys' fees, and expenses. (Ex. 1, ¶ 13). As part of this settlement, Plaintiffs agreed to release all wage-

and-hour claims that were or could have been asserted in this case, including but not limited to those arising under the FLSA and state law. (*Id.*).

## II.  The Court Should Award The Requested Reasonable Attorneys' Fees.

### A. The Applicable Legal Standard

Plaintiffs' requested attorneys' fees are reasonable and should be approved by the Court. The applicable legal standard strongly supports this result.

As contemplated by the FLSA, any settlement agreement must contain an award of reasonable attorneys' fees. *See Shockey v. Huhtamaki, Inc.*, No. 09-CV-2260-JAR-DJW, 2012 WL 3562136, at *1 (D. Kan. Aug. 17, 2012) (citing, e.g., *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)); 29 U.S.C. § 216(b). Unlike most fee-shifting statutes, the award for attorneys' fees under the FLSA is mandatory. *Compare* 29 U.S.C. § 216(b) *with* 42 U.S.C. § 1988(b) (the court may award fees "in its discretion"). The fee award need not be proportionate to the damages ultimately recovered by Plaintiffs. *Garcia v. Tyson Foods, Inc.*, No. 12-3346, 2014 WL 4068351, at *7 (10th Cir. Aug. 19). Ultimately, the guiding principle for awarding attorneys' fees is that the fees sought must be reasonable under the circumstances. *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994).

Under fee-shifting statutes such as the FLSA, attorneys' fees can be awarded based the lodestar methodology, in which the court multiplies the number of hours reasonably incurred by counsel by a reasonable hourly rate. *Garcia v. Tyson Foods, Inc.*, 2012 WL 5985561, at *2 (D. Kan. Nov. 29), *aff'd Garcia v. Tyson Foods, Inc.*, No. 12-3346, 2014 WL 4068351, at *7 (10th Cir. Aug. 19); *see also Lippold v. Cole*, 468 F. 3d 1204, 1222 (10th Cir. 2006). When reviewing the reasonableness of fees under the lodestar methodology, the Tenth Circuit utilizes the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488

4

F.2d 714, 717-19 (5th Cir. 1974). *Gottlieb*, 43 F.3d at 482-83 ("In all cases, whichever method is used, the court must consider the twelve Johnson factors.").

### B. The *Johnson* Factors Strongly Support Plaintiffs' Request for Attorneys' Fees.

Each of the *Johnson* factors supports the reasonableness of Plaintiffs' counsel's requested fees.

#### 1. The Time and Labor Required.

There is no dispute that this case, with its numerous rounds of briefing, extensive discovery, and preparation nearly up to the eve of trial, has demanded a significant amount of work. Plaintiffs' counsel have expended 2,215.7 hours of work prosecuting this case. (Ex. 1, ¶9.). This work totals $794,105 in lodestar. (Ex. 1, ¶¶ 9, 10 (lead counsel Stueve Siegel Hanson performed 2097.1 hours of work for a lodestar of $714,050); Ex. 2, Declaration of Rowdy Meeks, ¶ 6 (Rowdy Meeks Legal Group performed 118.6 hours for a lodestar of $80,055)). Not included in this total is more than $70,000 in lodestar that Plaintiffs' counsel have written off in exercising usual and prudent billing judgment as well as substantially reducing hourly rates of the attorneys who worked on the case. (Ex. 1, ¶ 9).

While Plaintiffs believe that the majority of all the time in this case could properly be sought here, because this time was reasonably incurred in pursuing the claims of the five settling plaintiffs, Plaintiffs and their counsel recognize that the Court entered summary judgment against nine other Plaintiffs who retain their right to appeal that ruling and who do not seek fees. (Ex. 1, ¶ 10). As a conservative measure, Plaintiffs' counsel have therefore reduced the total lodestar for this fee application on a pro rata basis, and submit only 5/14 (five settling plaintiffs out of 14 total plaintiffs), or 35.7% of their lodestar, for a

heavily discounted lodestar of $283,495. (*Id.*). This reduced total is conservative, as Plaintiffs' counsel dedicated a large quantity of the time incurred in the case to trial preparation, which related solely to the five remaining plaintiffs.[1] (*Id.*). Under the applicable legal standard, the time and labor required of Plaintiffs' counsel to achieve an excellent result for the settling Plaintiffs unquestionably supports the requested fees.

        2.        The Novelty and Difficulty of the Question Presented.

As the Court is aware, this litigation involved a variety of novel and difficult legal issues, including questions regarding (i) application of the outside sales and administrative exemptions, (ii) the contours of the continuous workday, and (iii) the application of the "good faith" defense. In addition, during the course of this litigation, counsel faced a changing legal landscape, with decisions redefining long-held concepts applicable to loan officer overtime cases. *See Mortgage Bankers Ass'n v. Harris*, 720 F.3d 966 (D.C. Cir. 2013), *cert. granted Nickols v. Mortgage Bankers Ass'n*, 134 S. Ct. 2820 (2014); *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012); *Hartman v. Prospect Mortg.*, LLC, 2014 WL 55339 (E.D. Va. Jan. 7, 2014); *Dixon v. Prospect Mortg.*, LLC, No. 13cv1434, 2014 WL 130942 (E.D. Va. Jan. 14, 2014); and *Hantz v. Prospect Mortg.*, No. 13CV1435 JCC/TRJ, 2014 WL 463019 (E.D. Va. Feb. 5, 2014). Counsel should be "appropriately compensated for accepting the challenge" of a difficult case that may involve new law. *Johnson*, 488 F.2d at 718. This factor supports Plaintiffs' requested fees.

---

[1] If requested by the Court, Plaintiffs' counsel can provide detailed time records to the Court for inspection *in camera* to protect the privileged and work product nature of the information. The content of Plaintiffs' counsel's time entries is particularly sensitive in these circumstances because the claims of the nine plaintiffs who were subject to the Court's summary judgment order remain subject to a potential appeal. This process was recently affirmed by the Tenth Circuit. *Garcia*, 2014 WL 4068351, at *4-5 (*in camera* review of daily time records permitted to prevent production of time records that would reveal strategies related to as yet unresolved claims).

      3.      The Skill Requisite to Perform the Legal Service Properly.

By definition, the effective management of a complex and difficult action requires a high degree of skill and ability. As described under the "experience, reputation and ability" factor below, Plaintiffs' counsel possess the requisite skills, and respectfully submit that a review of the docket reflects that counsel deployed those skills as effectively as possible given the challenges of this litigation. This factor supports Plaintiffs' requested fees.

      4.      The Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case.

"[O]nce the employment is undertaken the attorney is not free to use the time spent on the clients' behalf for other purposes." *Johnson*, 488 F.2d at 718. The sheer quantity of time dedicated to this case over its almost two year (and counting) lifespan—2,215.7 hours—necessarily limited counsels' ability to take on and prosecute other cases. (Ex. 1, ¶¶ 9, 12). This factor supports the Plaintiffs' requested fees.

      5.      The Customary Fee.

Plaintiffs' counsel's customary fees are comparable to—or higher than—the fees being sought here. Plaintiffs seek $283,495 for the 791 hours submitted for this fee application (which again, is only approximately 35% of the total fees incurred by Plaintiffs' counsel in this matter). This results in a blended hourly rate of $358.40. Considerably higher blended rates have recently been approved as reasonable within this Circuit as well as in other courts around the country. *In re Bank of America Wage and Hour Employment Litig.*, 2013 WL 6670602, at *4 (D.Kan. Dec. 18) (lodestar crosscheck conducted to approve a blended rate of $488.44); *Bruner v. Sprint*, No. 07-2164, 08-2133, 08-2149, 2009 WL 2058762, at *10 (D.Kan. July 14, 2009) (blended rate of $590.91 approved as part of the settlement of an FLSA collective action); *Berry v. Volkswagen Group of America, Inc.*, No.

7

0516-cv-01171-01 (Mo. 16th Cir. Div. 2, May 3, 2011), *aff'd* 397 S.W. 3d 425, 431-32 (Mo. 2013) (affirming trial court's decision to award fees for Stueve Siegel Hanson at rates of $400 to $650 for partners, $252 to $375 for associates, and $140 to $196 for professional staff). Notably, *Garcia* involved a contested fee application, and the district court found (and Tenth Circuit affirmed) that, using the lodestar method, Plaintiffs' counsel's rates and time in that case were both reasonable. *Garcia*, 2012 WL 59875561, at *9, *aff'd Garcia v. Tyson Foods, Inc.*, No. 12-3346, 2014 WL 4068351 (10th Cir. Aug. 19). Plaintiffs' counsel also bill hourly clients at similar hourly rates. (Ex. 1, ¶ 11; Ex. 2, ¶ 7). These factors support Plaintiffs' requested fees.

      6.    Whether the Fee is Fixed or Contingent.

Plaintiffs' counsel undertook this representation on a purely contingent basis—there would be no fees of any kind unless Plaintiffs achieved a monetary result. It is recognized that contingency representation should be compensated at a premium rate, and is appropriately considered when assessing the hourly rates of Plaintiffs' counsel. *See Burlington v. Dague,* 505 U.S. 557, 562 (1992) (the contingency basis of the representation is "already subsumed in the lodestar"). As part of the contingent fee relationship, Plaintiffs' counsel were also required to advance all litigation costs and expenses—nearly $35,000 in this case—that would have never been recouped absent a recovery. (Ex. 1, ¶¶ 12, 14). With the current settlements, Plaintiffs seek only 5/14 of their costs and expenses, and thus the majority of the expenses incurred by counsel remains at risk.

The risks incurred by counsel who accept and prosecute complex and potentially risky contingent fee cases such as this one should not be underestimated. Complex wage and hour actions of this type are, by their very nature, time-consuming and expensive. Due

8

to the contingent nature of the customary fee arrangement, lawyers must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind, plus the outlay of significant costs and expenses that may never be recovered. (Ex. 1, ¶ 7). The demands and risks of this type of litigation overwhelm the resources—and deter participation—of many traditional plaintiffs' firms. (*Id.*). The risk incurred by Plaintiffs' counsel due to the contingent nature of the representation supports Plaintiffs' requested fees.

7.  Any Time Limitations Imposed by the Client or the Circumstances.

"Priority work that delays the lawyer's other legal work is entitled to some premium." *Johnson*, 488 F.2d at 718. The responsibilities of this case imposed significant restrictions on how Plaintiffs' counsel allocated their personal and professional time. This is particularly relevant in a case like this where intensive trial preparation was required, and a settlement reached practically on the way to the courthouse steps. (Ex. 1, ¶ 9). This factor supports Plaintiffs' requested fees.

8.  The Amount Involved and the Results Obtained.

The total settlement amount of $92,102 provides the five settling Plaintiffs the full value of their actual damages that they would have sought at trial. This is a very favorable result considering all the circumstances. (Ex. 1, ¶ 13). Counsel's ability to negotiate a meaningful settlement in the face of such a formidable and aggressive defense supports Plaintiffs' requested fees.

9.  The Experience, Reputation and Ability of the Attorneys.

Plaintiffs' counsel are among the most experienced and capable attorneys prosecuting wage and hour cases in the country. (Ex. 1, ¶¶ 2-6; Ex. 2, ¶4). As detailed in

the attached declarations, Plaintiffs' counsel enjoy excellent reputations and have an unparalleled track record for obtaining outstanding results in complex wage and hour litigation such as this. (*Id.*). This factor supports Plaintiffs' requested fees.

      10.    The "Undesirability" of the Case.

This factor originally related to special circumstances, such as potential hardship in civil rights actions at a time when fighting discrimination might not be well-received in certain communities. *Johnson*, 488 F.2d at 719. This case is admittedly not "undesirable" in that sense. But what seems "desirable" in foresight may appear decidedly less so in hindsight. This case required an enormous expenditure of time and out-of-pocket costs in what often seemed an uphill battle in a changing landscape for loan officer cases. The chances for a successful outcome were never certain, and became increasingly precarious after the Court's ruling on BOK's motion for summary judgment. (*Id.*). Because the "desirability" profile of this case changed from its inception to its proposed conclusion, this factor supports Plaintiffs' requested fees.

      11.    The Nature and Length of the Professional Relationship with the Client.

Courts have stated that "[t]he meaning of this factor . . . and its effect on the calculation of a reasonable fee has always been unclear" and that "[c]ourts applying the *Johnson* factors typically state that this particular standard is irrelevant or immaterial." *Peterson v. Mortgage Sources Corp.*, 2011 WL 3793963, at *12 (D. Kan. Aug. 25, 2011) (citing *Lucas v. Kmart Corp.*, No. 99-cv-01923-JLK-CBS, 2006 WL 2729260, at *7 (D. Colo. July 27, 2006); *Ruiz v. Estelle*, 553 F. Supp. 567, 594 (S.D. Tex. 1982)). Although this factor is often not a major consideration, Plaintiffs' counsel note their almost two-year

relationship with each of the opt-in Plaintiffs in this litigation. To the extent this factor is deemed relevant, it supports Plaintiffs' requested fees.

        12.     Awards in Similar Cases.

The Tenth Circuit has clearly defined the law on fee awards similar to this one. In *Garcia*, this Circuit approved attorneys' fees to Plaintiffs' counsel based purely on a lodestar model. 2014 WL 4068351 (10th Cir. Aug. 19). In that case, as in this one, the fee award was larger than the settlement damages amount. The Court found that "the fee award need not be proportionate to the damages award." *Id*. at *7. The award approved in *Garcia* was approximately six times higher than the damages awarded in the case. Here, the award is approximately three times the settlement amounts, and Plaintiffs' counsel have proactively reduced their lodestar to less than 5/14 of their total lodestar. This factor supports Plaintiffs' fee.

## IV.     The Court Should Award Reasonable Costs and Expenses.

Along with "a reasonable attorney's fee," the FLSA provides that successful plaintiffs be awarded "costs of the action." 29 U.S.C. § 216(b). When evaluating reasonable expenses, Courts in this Circuit routinely approve expenses "of the kind and character typically borne by clients in non-contingent fee litigation, including retention of experts, copying charges, transcript charges, online research and mediation services." *See In re Bank of America Wage and Hour Employment Litig.*, 2013 WL 6670602, *4 (D. Kan. Dec. 18), citing *Case v. Unified Sch. Dist. No., 233*, 157 F.3d 1243, 1257 (10th Cir. 1998); *Garcia,* 2012 WL 5985561, *aff'd Garcia v. Tyson Foods, Inc.*, 2014 WL 4068351 (10th Cir. Aug. 19). To date, all Plaintiffs' counsel have incurred a total of $34,717.70 in costs and expenses. (Ex. 1, ¶ 14, Ex. 2, ¶10). These costs and expenses were reasonable and necessary for the effective

11

prosecution of this case and are of the kind and character typically borne by clients in non-contingent fee litigation. (*Id.*). As with attorneys' fees, while Plaintiffs believe they could properly seek the vast majority or all of the expenses incurred, for this application they are applying the same 5/14 pro rata reduction, and requesting expenses of only $12,394.21. Accordingly, the request for litigation expenses reasonably incurred in the amount of $12,394.21 should be granted.

**V.     Conclusion.**

Public policy strongly favors encouraging the protection of workers' wages in the United States. Because individual claims are often too small to justify paying attorneys an hourly rate, those rights are only protected if capable plaintiffs' lawyers are willing and able to take wage and hour cases on a contingency basis. If attorneys are not appropriately compensated for the extensive time, expenses, and risk associated with bringing these important cases, good lawyers will be forced to make a living elsewhere, and a fundamental public policy will go unfulfilled. Therefore, the only way to carry out congressional intent and the purpose behind the FLSA is for this Court to fully and fairly compensate Plaintiffs' counsel for their hard work in this complex and hotly contested litigation. As Plaintiffs' counsel have already reduced their lodestar to a pro rata share of their original total as well as exercised billing judgment, any further reduction in Plaintiffs' lodestar would amount to an unjust windfall to the benefit of a corporation that has exponentially more resources than any of the plaintiffs whose claims were vigorously prosecuted by Plaintiffs' counsel. Accordingly, Plaintiffs' counsel respectfully request that the Court award $283,495 in attorneys' fees and $12,394.21 in costs of litigation for the settling Plaintiffs.

Respectfully submitted,

October 22, 2014  **STUEVE SIEGEL HANSON LLP**


 /s/ George A. Hanson
George A. Hanson (*pro hac vice*)
Lauren A. Wolf (*pro hac vice)*
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel:    (816) 714-7100
Fax:    (816) 714-7101
hanson@stuevesiegel.com
wolf@stuevesiegel.com

ROWDY MEEKS LEGAL GROUP LLC
Rowdy B. Meeks (*pro hac vice*)
10601 Mission Road, Suite 100
Leawood, Kansas 66206
Tel:    (816) 977-2741
Fax:    (816) 875-5069
rowdy.meeks@rmlegalgroup.com


SNEED LANG PC
Mark A. Waller, OBA #14831
1700 Williams Center Tower I
One West Third Street
Tulsa, Oklahoma 7410303522
Tel:    (918) 588-1313
Fax:    (918) 588-1314
mwaller@sneedlang.com


**ATTORNEYS FOR PLAINTIFFS**

13

**CERTIFICATE OF SERVICE**

On October 22, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which delivered a copy to counsel of record.

*/s/ George A. Hanson*
Attorney for Plaintiffs
